# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

CHARLES EDWARD BLACK,
ADC #88859                                                                PLAINTIFF

V.                              4:15CV00553 JM/JTR

JAMES LINKER, Lieutenant,
Pope County Detention Center, et al.                                      DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

Plaintiff, Charles Edward Black ("Black"), is a prisoner in the Arkansas Department of Correction. He has filed this *pro se* § 1983 action alleging that, while he was in the Pope County Detention Center ("PCDC"), Defendants Dr. Nathan Neilson ("Dr. Neilson"), Lieutenant James Linker ("Lieutenant Linker"), Sergeant Crystal Hull ("Sergeant Hull"), and Officer Andy Ballinger ("Officer Ballinger") failed to provide him with constitutional adequate medical care for heart disease.[1] *Docs. 1, 2, & 23.*

Dr. Neilson has filed a Motion for Summary Judgment, a Brief in Support, two Statements of Undisputed Facts, and several Replies.[2] *Docs. 42, 43, 46, 53, 56, 57, 59, & 71.* Black has filed two Responses. *Docs. 45 & 54.*

Lieutenant Linker, Sergeant Hull, and Officer Ballinger have also filed a Motion for Summary Judgment, a Brief in Support, a Statement of Undisputed Facts, and two Replies. *Doc. 61, 62, 63, 72, & 73.* Black has filed a Response and two

---

[1] The Court has previously dismissed, without prejudice, all other claims raised by Black. *Doc. 8.*

[2] One of Dr. Neilson's arguments is that, pursuant to Local Rule 5.5(c)(2), Black's allegations against him should be dismissed, *without prejudice*, because Black filed his Response to the Motion for Summary Judgment on May 16, 2016, which was approximately one month *after* the April 13, 2016 deadline. *Docs. 47, 51, 53, 54 & 56.* Black asserts his Response was late because he was in the hospital. *Doc. 52.* Neither side has offered evidence to support or refute Black's contention.
 As will be explained in this Recommendation, there is no need for the Court to resolve this matter because it is clear Dr. Neilson is entitled to summary judgment, *on the merits,* with regard to *all* claims Black has asserted against him.

Statements of Disputed Facts. *Docs. 68, 69, & 70.*

Before addressing the merits of Defendants' Motions for Summary Judgment,[3] the Court will set forth the relevant facts, viewed in the light most favorable to Black, which support his claims against the Defendants:

1. In May of 2015, Black was a forty-nine-year old convicted prisoner, who previously had at least one heart attack and six stents placed in his coronary arteries.[4] *Doc. 59.*

2. On May 29, 2015, at around 6:00 p.m., Black told Sergeant Hull that he was having chest pains. Sergeant Hull called Dr. Neilson, a private physician who is the contract medical provider for PCDC prisoners. Dr. Neilson instructed Sergeant Hull to monitor Black's blood pressure and give him two aspirin. When Black's chest pains continued, Dr. Neilson instructed Lieutenant Linker to have Black meet him at a local emergency room. When Black arrived at the emergency room, around 9:00

---

[3] Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed. R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

[4] Black smoked cigarettes for thirty-years; used methamphetamine for an unspecified period of time; and, several years before his incarceration in the PCDC, suffered a collapsed lung when he was stabbed nine times in the chest and back. *Doc. 59.*

p.m., Dr. Neilson: (a) determined that Black was not in acute distress; (b) gave Black nitroglycerin, which relieved his chest pain; and (c) ordered a chest x-ray, EKG, and blood work. All of the results from those testes were normal. Later that evening, Dr. Neilson discharged Black from the emergency room to the PCDC, with a prescription for nitroglycerin and aspirin. *Doc. 59 at 1-10; Doc. 62 at A.*

3. On June 4, 2015, at around 7:00 p.m., Black had chest pains and shortness of breath. Dr. Neilson instructed a non-party jailer to give Black nitroglycerin and monitor his condition. When Black's symptoms did not improve, Dr. Neilson and Lieutenant Linker instructed the jailer to call for emergency medical services. Emergency responders evaluated Black at the PCDC and recommended that he go to the emergency room. Lieutenant Linker instructed a jailer, rather than the emergency responders, to transport Black to the emergency room. Around 8:00 p.m., Black arrived at the emergency room and was examined by a non-party physician. Black was not in acute distress. Additionally, his chest x-ray and blood work were normal. However, due to his cardiac history and unresolved pain, the non-party physician admitted Black for observation and a cardiac consultation. *Doc. 59 at 11-23; Doc. 62, Ex. B.*

4. On June 5, 2015, a cardiologist performed an angiogram which revealed restenosis of one of Black's previously placed coronary stents. The cardiologist

performed a balloon angioplasty. Black stayed in the hospital overnight. *Doc. 59 at 11-23.*

5.   On June 6, 2015, Black continued to complain of chest pain and requested IV pain medications. A cardiologist ordered blood work and a CT scan, both of which were normal. Around 4:30 p.m., the cardiologist discharged Black from the hospital to the PCDC with instructions to take daily beta-blockers, blood thinners, and cholesterol medications. He also gave Black nitroglycerin tablets to use as needed, and instructed Black to follow-up with Dr. Neilson in two weeks. *Doc. 59 at 11-23.* Around 8:00 p.m. that evening, Black told a non-party jailer that he was having chest pains, shortness of breath, and dizziness. Black then fell to the floor holding his chest. *Doc. 62, Ex. C.* The jailer immediately called for emergency services, and Black was taken to the emergency room by ambulance. Black was not in acute distress and had a normal EKG. As a precaution, he was admitted to the hospital for observation and a cardiac consultation. *Doc. 59 at 24-31.*

6.   On June 7, 2016, Black was examined by a cardiologist who noted that Black continued to seek IV pain medications even though his EKG and cardiac markers were normal. The cardiologist concluded that Black's "chest pain is not from cardiac etiology and there may be secondary gain for the patient's symptoms." *Doc. 59 at 33.* Black demanded a second opinion. Another cardiologist examined Black

and agreed that: "From a cardiology standpoint, I do not think [Black's] chest pain is cardiac." *Doc. 59 at 35*. However, because Black had a history of coronary artery disease and reflux, the second cardiologist: (a) increased Black's reflux medication; (b) prescribed ranolazine and hydrocodone to treat Blacks' pain; (c) instructed Black to wear a heart monitor for thirty days; and (d) recommended that Black be taken to the cardiologist who treated him prior his incarceration (hereinafter referred to as the "freeworld cardiologist") if he had any future chest pains. Black was then discharged to the PCDC. *Doc. 59 at 33-38*.

7. On June 9, 12, and 15, 2015, Black filed three PCDC grievances complaining that: (a) he had not been promptly taken to the hospital when he previously had chest pains; (b) he had not been placed on a heart monitor or received ranolazine and hydrocodone as ordered by the hospital cardiologists; and (c) he had not been seen by either Dr. Neilson or a cardiologist for follow-up care. *Doc. 1 at 5-8; Doc. 59 at 41-44*.

8. On June 16, 2015, Dr. Neilson examined Black, who reported that he was *not* currently experiencing chest pains, dizziness, or shortness of breath. Dr. Neilson told Black that he had spoken, by telephone, with Black's cardiologists and reviewed Black's hospital records. Dr. Neilson explained that Black had not received ranolazine because he was waiting for Medicaid's approval and that, in the meantime,

he was trying to obtain free samples of that medication for Black. Dr. Neilson then offered to put Black on a heart monitor, but Black demanded that a cardiologist perform that task. *Doc. 42, Ex. A; Doc. 59 at 45.*

9. On June 17, 2015, Black was taken to see his freeworld cardiologist. However, the heart monitor was sent to the local hospital, *not* to his freeworld cardiologist's office. Because Black was scheduled to be transported to the ADC the following day, his freeworld cardiologist decided not to track down the heart monitor and place Black on it. *Doc. 1 at 11-12.*

10. On June 18, 2015, Black was transferred from the PCDC to the ADC. Black claims PCDC jailers did not give him his medications the morning of the transfer or send his medications with him to the ADC. However, Black admits that, later that day, ADC medical providers gave him heart medications.[5] *Doc. 1 at 11-12.*

11. On September 3, 2015, Black filed this § 1983 action. *Doc. 1.*

12. In October of 2015, Black was transferred from the ADC to the PCDC to attend trial on a pending criminal charge. Black claims that, during the approximately two weeks he was in the PCDC, Sergeant Hull and Officer Ballinger failed to refill his aspirin prescription. *Doc. 23.* Black was later returned to the ADC.

---

[5] It is unclear whether Black was placed on a heart monitor after he was incarcerated in the ADC.

## II. Discussion

**A.  Black's Inadequate Medical Care Claims Against Dr. Neilson and Lieutenant Linker**

Black alleges that, in May and June of 2015, Dr. Neilson and Lieutenant Linker failed to provide him with adequate medical care for cardiac disease.[6] To prevail on this claim, Black must prove that: (1) he had an objectively serious medical need for cardiac care; and (2) Dr. Neilson and Lieutenant Linker subjectively knew of, but deliberately disregarded, his serious medical need. *See Saylor v. Nebraska,* 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).

The parties *agree* that Black had an objectively serious medical need for cardiac care. Thus, the relevant inquiry is whether there are any facts suggesting that Dr. Neilson and Lieutenant Linker were deliberately indifferent to that serious medical need. Deliberate indifference goes well beyond negligence or gross negligence and "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

---

[6] Black only contends that Sergeant Hall and Officer Ballinger were deliberately indifferent to his medical needs when he returned from the ADC to the PCDC, *in October of 2015,* to resolve another still pending criminal charge. *Doc. 23.*

### 1. Delay in Being Taken to the Hospital

Black asserts that Dr. Neilson and Lieutenant Linker were deliberately indifferent when they delayed having him taken to the hospital after he reported having chest pains on May 29, June 4, and June 6, 2015. [7] However, the undisputed medical and jail records demonstrate that, once Dr. Neilson learned Black was having chest pains, he instructed jailers to: (1) give Black aspirin and nitroglycerin; (2) monitor Black's blood pressure; and (3) take Black to the hospital when his chest pains did not subside. It is undisputed that Lieutenant Linker followed all of those instructions. *Docs. 62 & 59.* Additionally, Dr. Neilson explains, in his sworn Affidavit, that his care was medically appropriate and that Black was not harmed, *in any way*, by any of the alleged delays in having Black taken to the hospital. *Doc. 42, Ex. A.*

Black has not offered *any evidence* to refute the medical opinions expressed by Dr. Neilson in his Affidavit or to support his own personal lay opinions about Dr. Neilson's medical decisions. *See Langford,* 614 F.3d at 460 (explaining that a prisoner's disagreement with treatment decisions made by medically trained personnel does not rise to the level of a constitutional violation); *Nelson v. Shuffman,* 603 F.3d

---

[7] Black is *not* challenging the constitutionality of the medical care Dr. Neilson provided *at the hospital* on May 29, 2015.

439, 449 (8th Cir. 2010) (explaining that: "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment").

Accordingly, Dr. Neilson and Lieutenant Linker are entitled to summary judgment on Black's claim that their delay in having him transported to the hospital for his chest pains constituted constitutionally inadequate medical care claim under § 1983. Thus, that claim should be dismissed, with prejudice. *See Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016) (holding that, to avoid summary judgment, an inmate "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment"); *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir. 1997) (same).

### 2. Delay in Follow-Up Examination

Black asserts that Dr. Neilson and Lieutenant Linker were deliberately indifferent because either Dr. Neilson or a cardiologist should have conducted a follow-up examination after Black was discharged from the hospital on June 7, 2015. However, is *undisputed* that Dr. Neilson spoke to the hospital cardiologists, by telephone, soon after Black was discharged, and Dr. Neilson personally examined Black on June 16, 2014. Additionally, the parties agree that Black saw his freeworld

cardiologist on June 17, 2015. Importantly, there is *no evidence* that Black was in cardiac distress during his exam with Dr. Neilson or his freeworld cardiologist. Finally, Black has not offered *any evidence* demonstrating that he was harmed by the brief delay in seeing either Dr. Neilson or a cardiologist for a follow-up examination shortly after he was released from the hospital on June 7, 2015. *See Jackson*, 815 F.3d at 1119-20; *Crowley*, 109 F.3d at 502.

Accordingly, Dr. Neilson and Lieutenant Linker are entitled to summary judgment on this inadequate medical care claim, and it should be dismissed, with prejudice.

### 3. Delay in Receiving Medications and Heart Monitor

Black alleges that Dr. Neilson and Lieutenant Linker were deliberately indifferent when they failed to give him ranolazine and hydrocodone after he was discharged from the hospital on June 7, 2015. However, it is undisputed that Black did not report that he was experiencing chest pain when he saw Dr. Neilson on June 16, 2015 or his cardiologist on June 17, 2015. Additionally, Black concedes that he received his medications when he arrived at the ADC on June 18, 2015.

Similarly, Black claims that Dr. Neilson and Lieutenant Linker failed to have him placed on a heart monitor, as ordered by the cardiologist on June 7, 2015. However, that argument overlooks the *undisputed fact* that Dr. Neilson offered to

place Black on the heart monitor during his June 16, 2015 appointment but *Black refused to allow him to do so and told Dr. Neilson that he wanted a cardiologist to place him on the heart monitor.* Finally, Black has not offered any evidence demonstrating that he was harmed by the alleged delay in him receiving his medications or being placed on a heart monitor. *See Jackson*, 815 F.3d at 1119-20; *Crowley*, 109 F.3d at 502.

Accordingly, Dr. Neilson and Lieutenant Linker are entitled to summary judgment on Black's final inadequate medical care claim, and it should be dismissed, with prejudice.

## B.   Black's Inadequate Medical Care Claim Against Sergeant Hull and Officer Ballinger

Black alleges that, in October of 2015, Sergeant Hull and Officer Ballinger provided him with constitutionally inadequate medical care when they failed to give him aspirin for approximately two weeks. *Doc. 23*. Sergeant Hull and Officer Ballinger argue that they are entitled to summary judgment because Black failed to exhaust his administrative remedies as to this claim. *Doc. 61*. The Court concludes that this argument has merit.

The Prison Litigation Reform Act requires inmates to fully and properly exhaust their administrative remedies as to each claim *before they file a lawsuit in federal court.* *See* 28 U.S.C. § 1997e(a); *Johnson v. Jones*, 340 F.3d 624, 627 (8th

Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). It is *undisputed* that Black's October of 2015 inadequate medical care claims against Sergeant Hull and Officer Ballinger arose *after he commenced this action on September 3, 2015,* making it *impossible* for him to have exhausted those claims before he initiated this action.

Because Black failed to exhaust his administrative remedies regarding his October 2015 inadequate medical care claims against Sergeant Hull and Officer Ballinger *before he commenced this action,* they are entitled to summary judgment, and that claim should be dismissed, without prejudice. *See Barbee v. CMS,* Case No. 10-1891, 2010 WL 3292789 (8th Cir. Aug. 23, 2010) (unpublished opinion) (explaining that, if a prisoner has not properly exhausted his administrative remedies prior to filing suit, the trial court must dismiss the claim, without prejudice, and without reaching the merits); *Davis v. Harmon,* Case No. 10-1863, 2010 WL 3259378 (8th Cir. Aug. 19, 2010) (unpublished opinion) (same).

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Dr. Neilson's Motion for Summary Judgment *(Doc. 42)* be GRANTED, and Black's inadequate medical care claim against him be DISMISSED, WITH PREJUDICE.

2. Lieutenant Linker's, Sergeant Hull's, and Officer Ballinger's Motion for

Summary Judgment *(Doc. 61)* be GRANTED. Black's inadequate medical care claims against Sergeant Hull and Officer Ballinger should be DISMISSED, WITHOUT PREJUDICE, and his inadequate medical care claim against Lieutenant Linker should be DISMISSED, WITH PREJUDICE.

Dated this 22nd day of August, 2016.

                                                                                    UNITED STATES MAGISTRATE JUDGE